UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LINDA KRISCHEL aka LINDA KNUDSEN, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 05 C 6539 |
| v. | ) ) ) | Judge John F. Grady Magistrate Judge Geraldine Soat Brown |
| HENNESSY et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is Defendants' Motion to Strike (or Compel) Expert Reports ("Def.'s Mot."). [Dkt 73.] For the reasons set out below, the motion is granted. No later than February 20, 2008, plaintiff Linda Krischel shall serve complete reports from Dr. Malek and Dr. DePhillips containing all the elements required by Rule 26(a)(2)(B). If Krischel fails to serve complete reports by that day, any testimony by Dr. Malek or Dr. DePhillips shall not include an opinion as to whether Defendants' actions in January 2005 that are the subject of the lawsuit were the cause of Krischel's medical condition for which those doctors treated her in 2007.

### BACKGROUND

In this action brought under 42 U.S.C. § 1983 and state law, plaintiff Linda Krischel alleges that on January 25, 2005, she was arrested without probable cause by Chicago police officers

1

("Defendants") who used excessive force in arresting her. (Compl.) [Dkt 1.] Specifically, Krischel alleges that Defendants' use of force included "grabbing her and forcefully swinging her around and throwing her to the ground and smashing her face and head into the floor and tightly grabbing her arms." (*Id*. ¶ 14.) As a result, Krischel alleges, she suffered and continues to suffer physical and emotional pain, some or all of which may be permanent. (*Id*. ¶ 15.)

The case was referred to this court for discovery supervision. [Dkt 39.] At the initial hearing before this court on September 21, 2007, the court reminded all counsel of the Seventh Circuit's opinion in *Musser v Gentiva Health Servs*., 356 F.3d 751 (7th Cir. 2004), and advised counsel to review this court's Standing Order for Expert Disclosure and Discovery. *See* http://10.205.15.104/JUDGE/BROWN/expertdisclosure.pdf (last accessed January 30, 2008). The parties were also advised that discovery deadlines would be set at the next hearing.

On September 27, 2007, a discovery schedule was set. [Dkt 44.] Fact discovery, except the depositions of treating professionals, was ordered to be completed by October 31, 2007, Krischel was ordered to serve any Rule 26(a)(2) disclosures and reports by November 7, 2007, and the depositions of Krischel's experts were to be completed by December 5, 2007. (*Id*.) Also, Defendants' motion to compel discovery [dkt 37] was granted, and Krischel was ordered to produce all documents responsive to Defendants' second set of document requests by October 11, 2007. (*Id*.) Among the documents Krischel was required to produce were all medical records, reports, and other data pertaining to Krischel's physical and medical condition prior and subsequent to the alleged occurrence, including the injuries sustained. (Defs.' Mot. Compel, Ex. A, Request for Produc. 3.) [Dkt 37.]

On November 7, 2007, Krischel filed a motion for extension of time for her expert reports

under Rule 26(a)(2)(B). [Dkt 57.] In that motion, Krischel stated that she had "filed timely disclosures for each of her treating physicians pursuant to Rule 26(a)(2)(B) and *attached written reports* from the two most recent treating physicians, Michael [sic] Malek MD and George E. DePhillips MD . . . ." (*Id.* ¶ 2 (emphasis added).) Defendants opposed the extension, stating that Krischel had served a Rule 26 disclosure but had not served any expert reports. (Defs.' Resp. at 2.) [Dkt 64.]

Defendants were correct that Krischel had not served any expert reports. In her expert disclosure, Krischel listed six doctors who might give expert testimony. (Defs.' Resp., Ex. B, "Expert Disclosure".) Krischel disclosed Drs. Eugene Muzykansky, Laura Sanders, Mark Kuzucu, and Madhaviah Singa as treating physicians. (*Id.* at 1-2.) Additionally, Drs. Malek and DePhillips were disclosed as treating physicians who would also testify as to opinions on "causation, prognosis, and future condition, as provided in a written report pursuant to Rule 26(a)(2)(b)." (*Id.* at 3.) Over Defendants' objection, Krischel's motion was granted, and the time for her to serve Rule 26(a)(2) reports was extended until November 30, 2007. [Dkt 67.]

On December 18, 2007, Defendants filed the present motion, stating that no expert reports had yet been served. (Defs.' Mot. at ¶ 4.) At the initial hearing on the motion, Krischel's attorney said that she thought that Dr. Malek's report had been mailed to Defendants' attorney by the doctor's office, and that she (Krischel's counsel) would get it to Defendants' counsel that day, December 21, 2007. The motion was continued to allow Defendants time to review the report. Defendants subsequently filed a supplemental memorandum ("Defs.' Suppl. Mem." [dkt 78]), attaching a copy of Dr. Malek's report ("Malek Report") and complaining of the lateness and inadequacy of that Report. Apparently, Krischel has never tendered any report by Dr. DePhillips. Defendants now

3

request that the court strike the Malek Report and bar Krischel from presenting any expert testimony. (Defs.' Suppl. Mem. at 7.)  Krischel filed a response to the motion ("Pl.'s Resp." [dkt 80]), and Defendants filed a reply in support of their motion ("Defs.' Reply" [dkt 82].)

**DISCUSSION**

A. <u>Dr. Malek's treatment of Krischel, his proposed testimony, and his Report.</u>

Dr. Malek's initial consultation with Krischel was on July 27, 2007. (Malek Report at 1.) That was two-and-a-half years after Krischel's arrest and Defendants' alleged actions.  Dr. Malek and Dr. DePhillips performed anterior cervical discectomy and fusion surgery on Krischel on October 24, 2007.  (Pl.'s Resp.  at 2.)

Dr. Malek's "Report" is a one-and-a-half page letter addressed to Krischel's counsel, enclosing Dr. Malek's curriculum vitae.  It starts: "This is in response to your letter dated 11/22/07 in reference to Linda Knudsen [Krischel]." (Malek Report at 1.)  It then sets out brief answers to four questions that were presumably posed by Krischel's counsel in a November 22, 2007 letter, which is not attached.

In answer to "Question #1," Dr. Malek expresses his opinion that "Ms. Knudsen's [Krischel's] condition with cervical radiculopathy requiring surgical intervention in the form of anterior cervical discectomy and fusion was the result of the incident of 1/25/05 in which the patient said that police officers threw her to the ground." (Malek Report at 1.)

Dr. Malek gives the following as the basis of his opinion: "[T]he patient's history, her findings on physical examination, her radiographic studies, her response to treatment, as well as my experience, education and training." (*Id.*)  He states that his "review of [Krischel's] situation and

4

assessment included" five elements: the initial consultation on July 27, 2007, including review of radiographic and diagnostic studies; a follow up evaluation on August 10, 2007, including review of an MRI scan done on August 2, 2007; an evaluation done on August 30, 2007; a review of EMG/NCV done August 17, 2007; and intraoperative evaluation and follow-up evaluations two weeks after the operation and on November 29, 2007. (*Id*. at 1-2.) That is the totality of Dr. Malek's "Report."

Defendants' Supplemental Memorandum, filed on December 28, 2007, states that none of the evaluations and studies described by Dr. Malek had been disclosed to Defendants. (Defs.' Suppl. Mem. at 4.) In their Reply, Defendants report that even as of January 15, 2008, none of those documents had been produced, and neither had Krischel's counsel's November 22, 2007 letter to Dr. Malek. (Defs.' Reply at 6.)

### B. Causation of damages and the permanency of any injury are contested issues.

Defendants observe, and Krischel does not dispute, that causation is a critical issue in Krischel's claim for damages. (Defs.' Mot. at 3-4.) Defendants deny Krischel's claim that their actions in January 2005 caused Krischel any injury, let alone permanent injury. (Answer ¶ 15.) [Dkt 10.] Defendants "hotly contest[ ]" that their actions in January 2005 caused Krischel's surgery in July 2007. (Defs.' Reply at 6.) It will be Krischel's burden at trial to demonstrate that Defendants' acts proximately caused the injury and the damages that she claims. *See, e.g., Carter v. Chicago Police Officers*, 165 F.3d 1071, 1077 (7th Cir. 1998)(failure of trial court in excessive force case to instruct jury on definition of "proximate cause" was error, although error was waived in that case).

C. Why a Rule 26(a)(2)(B) report is required from Dr. Malek.

While Krischel asks for "additional time to file [sic] a supplemental report to complete the expert report," she also appears to suggest in her response that she is not required to serve a Rule 26(a)(2)(B) report from Dr. Malek because he is a treating physician. (Pl.'s Resp. at 2-3,7.) Accordingly, the reasons for that requirement will be reviewed.

Rule 26(a)(2) requires parties to disclose, at a time set by the court or in the alternative by the rule, the identity of any person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(a)(2)(A), (C). Subsection (a)(2)(B) of Rule 26 imposes an additional requirement relating to any witness who is retained or specially employed to present expert testimony; such a witness must provide a written report setting forth, *inter alia*, the opinions to be offered and the basis therefor.[1]

In *Musser*, the Seventh Circuit eliminated any doubt as to whether expert testimony by a treating physician is subject to disclosure pursuant to Rule 26(a)(2). The Seventh Circuit affirmed

---

[1] Rule 26(a)(2)(B) provides:

Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

summary judgment for a defendant following the district court's decision to exclude expert testimony by the plaintiff's treating physician because the plaintiff's counsel failed to serve a Rule 26(a)(2) disclosure regarding that physician. 356 F.3d 751, 757-58. The court in *Musser* declined to "reach the disputed issue of whether an individual who serves in the capacity of 'treating physician' (or any analogous position) may nonetheless be required to submit a report under Rule 26(a)(2)(B)." *Id*. at 758 n.3. The Seventh Circuit observed that "[i]t is clear that there is some expert testimony in the nature of the treating physician's testimony that does not require a report. But some district courts have suggested that if the Rule 26(a)(2)(A) testimony exceeds the scope of treatment and ventures into more general expert opinion testimony, a report may be necessary." *Id*. The court concluded, however, that it was not necessary to reach that issue. *Id.*

After considering decisions on both sides of the "disputed issue," this court has held that when the testimony of a treating physician goes beyond the scope of treatment, observation, and diagnosis, and includes opinions on causation, prognosis or the future impact of the injury, the treating physician must provide a report satisfying the requirements of Rule 26(a)(2)(B). *Griffith v Northeast Ill. Regl. Commuter R.R. Corp.*, 233 F.R.D. 513, 518 (N.D. Ill. 2006); *Sowell v. Burlington N. & Santa Fe Ry. Co.*, No. 03 C 3293, 2004 WL 2812090 at *6 (N.D. Ill. Dec. 7, 2004).

A treating physician who testifies about his observation, diagnosis and treatment of a patient is testifying about what he saw and did and why he did it, even though the physician's treatment and his testimony about that treatment are based on his specialized knowledge and training. As the Seventh Circuit expressed in *Musser,* when the treating physician's testimony is so limited*,* he is "providing expert testimony because of [his] involvement in the facts of the case . . . ." 356 F.3d at 757. Thus, when a treating physician limits his testimony to his observation, diagnosis and

7

treatment, there is no need for a Rule 26(a)(2)(B) report.

In some cases the treating doctor may form an opinion about causation as a necessary part of the treatment rather than at the request of counsel, and the purposes of Rule 26 may be satisfied without a formal report. *See. e.g., Fielden v. CSX Transp. Inc.*, 482 F.3d 866, 870-71 (6th Cir. 2007)(holding that a formal report is not required when determining causation is an integral part of treating a patient but cautioning that always permitting treating physicians to testify without a report would permit circumvention of the policies of Rule 26). But often a treating physician who testifies as to causation, prognosis or future disability is going beyond what he saw and did and why he did it. He is going beyond his personal involvement in the facts of the case. He is giving an opinion that he formed *because there is a lawsuit.* That opinion may rely on information that is not part of the physician's personal knowledge or professional training. Here, for example, Dr Malek is relying on his interpretation of what happened during the incident in January 2005, which he did not personally observe. Recently, another court applying *Fielden* in an excessive force case permitted the plaintiff's treating doctor to testify to his treatment of the plaintiff's broken jaw, but held that the doctor could not testify about the cause of the plaintiff's injuries. *Potvin v. City of Westland Police Dept.*, No. 05-CV-70291, 2007 WL 1975045, **3-4 (E.D. Mich. July 2, 2007(Borman, M.J.).[2]

This court has adopted a Standing Order, which provides, in relevant part:

A treating professional, including a physician, nurse, psychologist, etc., must be disclosed pursuant to Rule 26(a)(2)(A) in order to testify pursuant to Rule 702. That includes testimony about any diagnosis made for the purpose of treatment and the

---

[2] *Watson v. U.S.*, 485 F.3d 1100 (10th Cir. 2007), another recent decision, involved a testifying doctor and Rule 26(a)(2)(B), but in a different situation. Although the expert in that case was a physician, he had never treated the plaintiff. He was an employee of the defendant and did not regularly give expert testimony. Thus, the court held, the district court did not abuse its discretion by allowing him to testify as an expert without providing a report. *Id.* at 1107.

8

> treatment prescribed or provided. However, if the treating professional will provide testimony regarding <u>causation, prognosis or the future impact of a condition or injury</u>, the professional *shall follow* Rule 26(a)(2)(B) and serve an expert report complying with that Rule.

http://10.205.15.104/JUDGE/BROWN/expertdisclosure.pdf (last revised August 2006).

The circumstances of this case do not provide a reason to depart from that requirement. On the contrary, this case illustrates why a Rule 26(a)(2)(B) report is required when a treating physician provides expert testimony as to causation.

Krischel has served a formal disclosure of Dr. Malek as someone who may provide testimony under Rule 702. Krischel proposes, however, that Dr. Malek's testimony will go beyond a description of his treatment of Krischel – that is, beyond his diagnosis of cervical radiculopathy requiring anterior cervical discectomy and fusion surgery – to include an opinion that the reason Krischel suffered from cervical radiculopathy and required surgery in 2007 was an event that occurred more than two years before Dr. Malek's initial consultation with her. Dr. Malek's opinion as to causation was formed only in response to a question from Krischel's counsel. It was not part of Krischel's treatment in 2007 to render an opinion about Defendants' actions in 2005. Dr. Malek rendered that opinion only because this lawsuit is pending.

Dr. Malek's causation opinion is likely to play a substantial part in Krischel's claim for damages, yet Dr. Malek's current Report provides no information about how he came to that opinion. As noted above, the entire description of the basis for his opinion is one sentence: "[T]he patient's history, her findings on physical examination, her radiographic studies, her response to treatment, as well as my experience, education and training." (Malek Report at 1.) That leaves a host of questions unanswered. What was the source of Dr. Malek's information about Krischel's history?

How does he know what happened during the incident? Does he rely only on Krischel's recounting to him, or did he review any deposition testimony, for example, that of Krischel, Defendants or other witnesses? Did he review any medical records before or after the incident other than his own?[3] How does he know that Krischel does not have a history of cervical problems unrelated to the incident? What in his own experience provides a basis for his opinion? Why does he think that the 2005 incident resulted in cervical radiculopathy, and why would that condition require surgery two years after the incident?

The insufficient foundation for Dr. Malek's opinion is a problem not only for Defendants but also for the court. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993), the Supreme Court emphasized that a federal trial judge has a special obligation to act as a gatekeeper to screen out purported scientific expert testimony that is not both relevant and reliable. In *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999), the Court extended that standard to all expert testimony. Whether the proposed expert seeks to base his testimony on professional studies or entirely on personal experience, the expert must employ the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id*. at 152. Thus, the court as "gatekeeper" has a duty to exclude testimony in the guise of expert opinion that does not meet the standards of Rule 702. *Id*. Fed. R. Evid. 702 requires that such testimony be based on sufficient facts or data, be the product of reliable principles and methods, and result from the witness' reliable application of the principles and methods to the facts of the case.

When the issue of causation is not disputed – for example, when an accident results in the

---

[3] Notably, the Report does not specifically identify any medical records pre-dating Dr. Malek's initial consultation on July 27, 2007

loss of a limb – there really is no need for expert testimony on that issue. In this case, however, as in many cases, causation is a critical, disputed issue, and one on which the plaintiff has the burden of proof. When causation is disputed, as it is here, the information required by Rule 26(a)(2)(B). allows the opposing party to explore, and the court ultimately to determine, whether the proposed testimony on that issue meets the standards of *Daubert* and Rule 702.

Although Defendants have the right to depose Dr. Malek, one of the purposes of amending Rule 26(a)(2)(B) to require a detailed report was so that "the length of the deposition of such experts should be reduced, and in many cases the report may eliminate the need for a deposition." Fed. R. Civ. P. 26(a)(2) Advisory Committee Notes to 1993 Amendments. The burden is on the party seeking to present testimony under Rule 702 to demonstrate that the testimony meets the requirements of the Rule and of *Daubert*. Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendment (stating that the admissibility of all expert testimony is governed by Rule 104(a), under which the proponent has the burden of establishing admissibility by a preponderance of the evidence). It is not the job of the opposing party to make a record of the factual basis of the expert's testimony by way of a deposition (which under Rule 26(b)(4)(C) is generally at the expense of that opposing party). *See Gregory v. Oliver*, No. 00 C 5984, 2002 WL 31972165 at *1-2 (N.D. Ill. Dec. 27, 2002)(Shadur, J.). Rather, it is the responsibility of the party offering the testimony. *Id.*

That does not mean a treating physician cannot testify at trial; as the Seventh Circuit observed in *Musser*, if the physician has been disclosed pursuant to Rule 26(a)(2)(A), the physician may testify as to the nature and extent of the injury he observed and diagnosed, and the treatment that he rendered for that injury. 356 F.3d at 757. However, in a case like this, where the physician's causation opinion was developed in response to a request from counsel, the treating physician cannot

testify as to causation without a report satisfying the requirements of Rule 26(a)(2)(B). In extraordinary circumstances, where requiring an expert's report from a treating physician would work undue hardship, a party can move for relief from the report requirement to prevent an unjust result. Nothing suggests that is the case here.

Krischel's counsel knew that Dr. Malek would be required to prepare a Rule 26(a)(2)(B) report in order to testify that the cause of Krischel's 2007 surgery was the Defendants' actions in 2005. That has not been done.

### D. Dr Malek's report does not comply with Rule 26(a)(2)(B).

A vital part of the expert report is "a complete statement of all opinions to be expressed and the basis and reasons therefor." Fed. R. Civ. P. 26(a)(2)(B). One of the reasons the current Rule requires that specific information was dissatisfaction with "sketchy and vague" information provided in the past regarding expert testimony.

> The information disclosed under the former rule in answering interrogatories about the "substance" of expert testimony was frequently so sketchy and vague that it rarely dispensed with the need to depose the expert and often was even of little help in preparing for a deposition of the witness . . . .
>
> [T]he report [under Rule 26(a)(2)(B)], which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness.

Fed. R. Civ. P. 26(a)(2) Advisory Committee Notes to 1993 Amendments.

Dr. Malek's "Report" contains only a "sketchy and vague" disclosure of the substance of his proposed direct examination, and nothing about the reasons for his opinion. In addition to disclosing the substance of his proposed testimony and the reasons for his opinion, Dr. Malek must also

disclose all of the other elements spelled out in Rule 26(a)(B)(2), such as the compensation that he will receive for testifying and a list of the cases in which he has testified at trial or at deposition in the past four years, which are not provided in his current Report.

Dr. Malek must also provide all of the data and information he used in forming his opinions and any exhibits he will use to summarize or support his opinions. Thus, Krischel must produce to Defendants all of the reports, studies, and evaluations Dr. Malek used in arriving at his opinion, as well as the November 22, 2007 letter from Krischel's counsel. Krischel should have produced those items already, as part of Krischel's Rule 26(a)(1)(B) disclosures and pursuant to Krischel's obligation to supplement her disclosures and discovery responses under Rule 26(e).

Accordingly, Defendants' motion is granted. No later than February 20, 2008, Krischel shall serve complete reports from Dr. Malek and Dr. DePhillips containing all the elements required by Rule 26(a)(2)(B). If Krischel fails to serve complete reports by that day, any testimony by Dr. Malek or Dr. DePhillips shall not include any opinion as to whether Defendants' actions in January 2005 that are the subject of the lawsuit were the cause of Krischel's medical condition for which those doctors treated her in 2007.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

February 6, 2008