**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LINDA KRISCHEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 05 C 6539 |
| | ) |
| PETER HENNESSY, PAUL CIHOCKI, | ) |
| JOSEPH STUBBS and unidentified | ) |
| Oak Lawn Police Officers | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

The defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons explained below, we grant their motion in part and deny it in part.

## BACKGROUND

This lawsuit stems from plaintiff Linda Krischel's arrest and prosecution for domestic battery and resisting arrest.  On January 25, 2005, Krischel returned to her home in Oak Lawn, Illinois after having dinner and drinks (specifically, three beers) at a local restaurant.  (Def.'s Local R. 56.1(a)(3) Stmt. of Undisputed Material Facts in Supp. of their Mot. for Summ. J. (hereinafter, "Defs.' Stmt"), at ¶¶ 5-6.)  Krischel smelled marijuana as she entered her home and confronted her 15 year-old son, Michael Knudsen, who was upstairs in his bedroom.  (Defs.' Stmt. ¶¶ 7, 10, 13.)  The two argued and continued to do so for "a long time"

before Krischel called the police. (Defs.' Stmt. ¶ 11; Krischel Dep. at 29-30.) She generally recalls telling the 911 operator that "I need the police because my kid's been smoking dope upstairs probably and I wanted [sic] him out of there." (Krischel Dep. at 29-30.) She also told the dispatcher that her son was "pushing" her. (Id. at 30.) After Krischel's call, defendant Peter Hennessy, an Oak Lawn police officer, received a computer generated 911-dispatch transmission in his squad car stating: "Domestic Disturbance 16YO SON VS THE MOTHER/MOM HAS HAD A FEW COCKTAILS." (Id. at ¶ 12.)[1] Hennessy, defendant Paul Cihocki and a third officer responded to the transmission and arrived at Krischel's home within several minutes of her 911 call. (Defs.' Stmt. ¶ 13; Krischel Dep. at 31; Def. Resp. to Pl. Stmt. ¶ 6.) The officers told Krischel and Knudsen, who were still arguing when they arrived (Defs.' Stmt. ¶¶ 16-17), to separate and "call it a night." (Id. at ¶¶ 17, 19.) As soon as Knudsen confirmed that the officers had left, he returned downstairs to resume his argument with his mother. (Id. at ¶¶ 20-21.) Krischel again called 911, telling the operator "[i]f you don't get this kid out of here, I'm gonna beat his ass." (Pl. Stmt. ¶ 11.) Hennessy again received a computer

---

[1] Plaintiff objects to paragraphs 12 and 12A of defendants' Statement of Facts claiming that she lacks sufficient information to admit or deny them. (Pl. Resp. to Def. Stmt. ¶¶ 12 and 12A.) She also requests leave to depose the "Keeper of Records for the Oak Lawn police department." (Id. at ¶ 12A.) Defendants filed their Statement of Facts on October 12, 2007 and we granted plaintiff several generous extensions of time — totaling almost five months — to respond. Plaintiff's request is egregiously late and is denied. Paragraphs 12 and 12A of defendants' Statement of Facts are deemed admitted.

generated 911-dispatch transmission, this time stating "Domestic Disturbance mom called and adv that shje [sic] just beat the crap out of her 16yo child mom sounds intoxicated." (Defs.' Stmt. ¶ 23.) Hennessy arrived back at Krischel's home approximately two minutes after Krischel's second 911 call, and Krischel let him in through the back door. (<u>Id.</u> at ¶ 24-25.)

At this point, Krischel's and Hennessy's accounts sharply diverge. Hennessy contends that Krischel "rushed back into her home" after opening the door. (<u>Id.</u> at ¶ 38.) He followed her into the kitchen, which Knudsen had just entered. (<u>Id.</u> at ¶ 40.) Krischel then began to punch Knudsen "repeatedly in the back of the head." (<u>Id.</u>) When she ignored Hennessy's order to stop, he grabbed her by her upper arms to restrain her, "took her down to the ground" and handcuffed her. (<u>Id.</u> at ¶ 41.) In Krischel's version of events, Hennessy stood near her in the kitchen and Knudsen stood approximately five or six feet away.[2] (<u>Id.</u> at ¶ 27.) Her son continued to insult her, at which point she "went to walk towards" him. (<u>Id.</u> at ¶ 27.) She testified at her deposition that she was, at that point, "[p]robably thinking about slapping" her son. (Krischel Dep. at 44.) She also testified, however, that she had not hit her son at any point that evening and did not say or do anything threatening as she moved towards him. (<u>Id.</u>; Pl. Stmt. at

---

[2] Krischel denies that she "rushed" back into her home, but she does not explain how she, Hennessy and Knudsen came to be in the kitchen. (Pl. Resp. to Def. Stmt. ¶ 38.)

14-15.) She "didn't even get a step in" before Hennessy grabbed
her, spun her around and slammed her to the floor. (Krischel Dep.
at 45.)[3] With one foot on her back, Hennessy instructed Krischel
to give him her free hand to be handcuffed, and she complied. (Pl.
Stmt. ¶ 20.) After a "while" — the record does not reveal exactly
how much time elapsed — defendants Cihocki and Stubbs entered the
kitchen. (Krischel Dep. at 49.) Krischel claims that they let her
sit for 10 minutes in a "puddle" of her own blood before grabbing
her tightly by her arms, jerking her up off the floor and
"jerk[ing] her all around." (Id. at ¶ 25.) They continued to hold
her arms tightly, bruising her, as they walked her out to a waiting
ambulance. (Id. at ¶ 26-27.) Krischel spent two days in the
hospital receiving treatment for her injuries. (Crim. Trans. at
45.) At her criminal trial, she was awarded a directed verdict on
the charge of resisting arrest (id. at 26) and found not guilty of
domestic battery (id. at 46).

Krischel has filed a three-count complaint alleging false
arrest (Count I), excessive force (Count II) and malicious
prosecution (Count III). Defendants now move for summary judgment
on all three counts.

---

[3] This is one of Krischel's several, not necessarily inconsistent,
descriptions of what happened in her kitchen. Defendants emphasize her earlier
testimony that "before I knew it, I was on the ground bleeding." (Krischel Dep.
at 43.; see also Crim. Trans. at 31 ("[W]ithin a minute all I remember is being
on the floor.").) They also rely on Knudsen's testimony that Hennessy "lost
balance of" Krischel and collapsed on top of her. (Defs.' Stmt. ¶ 28-29.)

# DISCUSSION

## A. Legal Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

## B. False Arrest

Defendants contend that they had probable cause to arrest Krischel, foreclosing Krischel's false arrest claim under section 1983. See Chelios v. Heavener, 520 F.3d 678, 685 (7th Cir. 2008)

("Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers."). "Police ordinarily have probable cause if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" Wagner v. Washington County, 493 F.3d 833, 836 (7th Cir. 2007) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979)). "[T]he court must consider the facts as they reasonably appeared to the arresting officer, seeing what he saw, hearing what he heard, and so forth." Holmes v. Village of Hoffman Estates, 511 F.3d 673, 679 (7th Cir. 2007).

Krischel insists that material factual disputes about the January 25 incident defeat defendants' motion for summary judgment. First, she points out that the parties dispute whether she struck her son in Hennessy's presence during his second visit to their home. While this dispute is real, it is immaterial because Hennessy had probable cause to arrest Krischel based upon the 911 operator's transmission alone. See United States v. Mounts, 248 F.3d 712, 715 (7th Cir. 2001) ("[P]olice officers are entitled to rely on the reasonable information relayed to them from a police dispatcher."); cf. Morfin v. City of East Chicago, 349 F.3d 989, 1000 (7th Cir. 2003) ("[T]he parties dispute the events leading to

the arrest of Mr. Morfin; one account would support a finding of probable cause and justify a resulting arrest, *and the other would not*.") (emphasis added). Hennessy could have reasonably believed that Krischel and Knudsen had disregarded his earlier instruction to separate and that their already heated argument escalated to the point of physical confrontation after he left their home. Krischel responds that the 911 operator inaccurately summarized the substance of her call. (<u>Compare</u> Pl. Stmt. ¶ 11 (Krischel told the dispatcher that she was "gonna beat his ass"), <u>with</u> Defs.'s Stmt. ¶ 23 ("Domestic Disturbance mom called and adv that shje [sic] *just beat* the crap out of her 16yo child mom sounds intoxicated.") (emphasis added).) This is irrelevant because Hennessy did not know what Krischel had actually said to the operator, only what the operator relayed to him. <u>See</u> <u>Mounts</u>, 248 F.3d at 715 ("Whether or not the officers were given faulty (inaccurate) information concerning the present status of Mount's Illinois driver's license is immaterial because police officers are entitled to rely on the reasonable information relayed to them from a police dispatcher."). Based upon what Hennessy knew at the scene, <u>Holmes</u>, 511 F.3d at 679, he had probable cause to arrest Krischel.

In the alternative, Krischel argues that the probable cause established by the 911 operator's transmission "dissipated" before Hennessy arrested her. (Pl. Opp'n at 5-6.) We disagree. There was only a brief interval between when Krischel let Hennessy into

her home and the confrontation in the kitchen. Once in the kitchen, she moved towards her son in response to his continued insults. When asked to explain why, she testified that she was "[p]robably thinking about slapping" him. (Krischel Dep. at 44.) At that point Hennessy grabbed her, took her to the floor, then handcuffed her. Defendants Cihocki and Stubbs arrived some time later and escorted her (roughly, she claims) to an ambulance outside her home. While the circumstances were not as dire as the 911 operator's dispatch transmission would have led one to believe, this sequence of events is not inconsistent with Krischel having committed a crime. See, e.g., Sheik-Abdi v. McClellan, 37 F.3d 1240, 1247 (7th Cir. 2004) (Where the defendant officer walked into an ongoing domestic dispute, he was entitled to rely on a third party's statement that a battery had occurred without conducting further investigation.); cf. Davis v. Thillman, No. 93 C 3335, 1994 WL 14620, *4 (N.D. Ill. Jan. 19, 1994) (Before the plaintiff was arrested and taken away, the defendant officers received information at the scene sufficient to undercut the probable cause established by a 911 emergency call).[4] This is so even though

---

    [4] Krischel also argues that Hennessy did not have probable cause to arrest her for obstructing a police officer. (Pl. Opp'n at 7-8.) Because we conclude that the defendants had probable cause to arrest Krischel for domestic abuse, it is irrelevant — for purposes of plaintiff's false-arrest claim — whether they also had probable cause to arrest her for resisting or obstructing a peace officer under 720 ILCS 5/31-1(a). See Holmes, 511 F.3d at 682 ("An arrested individual is no more seized when he is arrested on three grounds rather than one; so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if another ground cited for the arrest was flawed.") (emphasis in original).

Knudsen "bore no contemporary markings of bodily harm."
Sheik-Abdi, 37 F.3d at 1247. In sum, we conclude that the
defendants had probable cause to arrest Krischel.

**B.   Excessive Force and Qualified Immunity**

Krischel contends that the defendants violated her Fourth and
Fourteenth Amendment rights by using excessive force to arrest her.
Qualified immunity shields the defendants from suit unless Krischel
can demonstrate "(1) 'the violation of a constitutional right' that
is (2) 'clearly established at the time of the alleged violation,
so that a reasonable public official would have known that his
conduct was unlawful.'" Green v. Butler, 420 F.3d 689, 700 (7th
Cir. 2005) (quoting Sonnleitner v. York, 304 F.3d 704, 716 (7th
Cir.2002)). Defendants contend, first, that they used a reasonable
amount of force, and second that the circumstances of the arrest
were such that the defendants reasonably believed their actions
were lawful. We will address each of these arguments in turn.

**1.   Violation of a Constitutional Right**

"The force employed by a police officer is deemed excessive
if, in light of the totality of the circumstances, it was greater
than was reasonably necessary to effectuate the seizure." Holmes,
511 F.3d at 685. In applying this standard, we consider "the
severity of the crime at issue, whether the suspect poses an
immediate threat to the safety of the officers or others, and
whether he is actively resisting arrest or attempting to evade

arrest by flight." <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989).

Reasonableness is "judged from the perspective of a reasonable

officer on the scene, rather than with the 20/20 vision of

hindsight." <u>Id.</u>  On the other hand, our Court of Appeals has

cautioned that "summary judgment or judgment as a matter of law in

excessive force cases should be granted sparingly." <u>Abdullahi v.</u>

<u>City of Madison</u>, 423 F.3d 763, 773 (7th Cir. 2005) (quoting <u>Santos</u>

<u>v. Gates</u>, 287 F.3d 846, 852 (9th Cir. 2002)).  This is so because

"the <u>Graham</u> reasonableness inquiry nearly always requires a jury to

sift through disputed factual contentions, and to draw inferences

therefrom." <u>Id.</u> (internal citation and quotation marks omitted).

      *a.  Officer Hennessy*

Defendants argue that Hennessy applied reasonable force to

restrain Krischel, and then lost his balance causing both him and

Krischel to fall to the floor.  (Def. Mem. at 10; Knudsen Dep. at

45.)  In this version of events, Krischel's injuries were

accidental and not commensurate with the amount of force Hennessy

actually used.  The premise of this argument — that Knudsen's

testimony is the only account of what happened in Krischel's

kitchen — is incorrect.  First, Krischel testified that Hennessy

spun her around and slammed her to the floor.  (Krischel Dep. at

45.)  She *also* testified that Hennessy seized her and "*before I*

*knew it*, I was on the ground and bleeding." (<u>Id.</u> at 43 (emphasis

added); <u>see also</u> Crim. Trans. at 31 ("[W]ithin a minute all I

remember is being on the floor.").) Her testimony is not necessarily contradictory, and even if it were, the contradiction goes only to her credibility. See Abdullahi, 423 F.3d at 773 ("At summary judgment, a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of competing evidence."). Second, Hennessy testified at Krischel's criminal trial that he "took her down"/"placed" her on the floor (Crim. Trans. at 11, 23), not that he "lost his balance" and dropped her. A reasonable jury could conclude that Hennessy intentionally took Krischel to the floor (notwithstanding Knudsen's testimony), and that the injuries that she sustained are consistent with being "slammed" (not "placed") there.

Even accepting Krischel's testimony that Hennessy slammed her to the floor, he argues that his actions were reasonable. As we previously discussed, Hennessy could have reasonably believed that Krischel had hit her son — a serious offense — after Hennessy left Krischel's home the first time. On the other hand, it would have been apparent to a reasonable officer on the scene, even taking into account the fact that events unfolded quickly, that the crime was not as severe as the 911 dispatcher had described. It is undisputed that Knudsen showed no signs of physical injury, and accepting Krischel's version of events she did not hit her son in Hennessy's presence or at any other time. The scene Krischel

describes is similar to the one that Hennessy had witnessed just
minutes earlier, with Knudsen hurling insults at his mother. At
that point, she took a half-step or a step towards her son — who
stood between five and six feet away — and Hennessy took her down
with sufficient force to cause injuries requiring between 8 and 10
stitches and (according to Krischel) lasting physical damage. See
Holmes, 511 F.3d at 687 ("Certainly the type and severity of
injuries Holmes describes would be relevant to a determination of
the degree of force Teipel employed and whether that force was
reasonable.").[5] Even taking into account Krischel's testimony that
she was "probably thinking about slapping" her son, a reasonable
juror could conclude that the amount of force Hennessy used was
"greater than was reasonably necessary to effectuate the seizure."
Holmes, 511 F.3d at 685.

   b.  *Officers Cihocki and Stubbs*

   Defendants argue that Krischel's claims against Cihocki and
Stubbs, based on events occurring after she was handcuffed by

_____

[5] In each of the cases defendants cite, the officers used less force than
is at issue here. See Smith v. City of Chicago, 242 F.3d 737, 744 (7th Cir. 2000)
("[T]he officers' use of force here was not high, let alone excessive."); Tatum
v. City and County of San Francisco, 441 F.3d 1090, 1096 (9th Cir. 2006) ("There
is no evidence that Smith applied more force than necessary to restrain Fullard
while attempting to secure him in handcuffs."); Nolin v. Isbell, 207 F.3d 1253,
1258 n.4 (11th Cir. 2000) (Concluding that the circumstances of the plaintiff's
arrest "sound little different from the minimal amount of force and injury
involved in a typical arrest."); Davis v. City of East Cleveland, No. 03 CV 2075,
2006 WL 753129, * 10 (N.D. Ohio Mar. 22, 2006) ("Davis has not alleged any injury
relating to his removal from the cell and handcuffing."); Panamo v. City of
Morgan Hill, No. 01-825, 2002 WL 1497521, *4 (N.D. Cal. July 9, 2002) ("There is
no evidence that plaintiff was thrown to the floor with a great amount of force
or in a dangerous manner;" no admissible evidence of injury).

Hennessy, are governed by the Fourteenth Amendment's "deliberate indifference standard." (Def. Reply at 15.) Even assuming that defendants did not waive this argument by raising it for the first time in their reply brief, it has no merit. Cf. Villanova v. Abrams, 972 F.2d 792, 797 (7th Cir. 1992) ("[T]he Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause."); see also Lopez v. City of Chicago, 464 F.3d 711, 719 (7th Cir. 2006) (same). Krischel was arrested without a warrant and her claims arise from the rough treatment she allegedly received from the defendants before probable cause was initially determined. Villanova, 972 F.2d at 797.[6] Accordingly, we will evaluate Krischel's claim against Cihocki and Stubbs under the Fourth Amendment's reasonableness standard.

Krischel claims that she was bruised when defendants Cihocki and Stubbs grabbed her tightly by her arms, jerked her up off her kitchen floor, and "jerked her all around." (Pl. Stmt. ¶¶ 25, 27; see also ¶ 26 ("They were not gentle, let me put it that way.").) Defendants argue Krischel's injuries were *de minimis* and cannot

---

[6]  Proffitt v. Ridgeway, 279 F.3d 503 (7th Cir. 2002) is not to the contrary. Although not discussed in the Court's opinion, the detainee in that case was arrested and formally charged before the challenged conduct occurred. See Proffitt v. Ridgeway, No. 98-3182, Order at 2, 9 (C.D. Ill. Aug. 15, 2000).

support an excessive force claim. (Def. Mem. at 15.) But the fact that the defendants did not cause permanent or severe injury is not sufficient to warrant summary judgment. Compare Holmes, 511 F.3d at 687 ("A factfinder might conclude that Holmes's injuries were slight but nonetheless find that Teipel employed more force than was justified."), with Freeman v. Gore, 483 F.3d 404, 417 (5th Cir. 2007) (Summary judgment was incorrectly denied where "the most substantial injury claimed by [plaintiff] is that she suffered bruising on her wrists and arms because the handcuffs were applied too tightly when she was arrested."). On the other hand, the defendants' actions were not plainly gratuitous. Cf. Holmes, 511 F.3d at 687 (The defendant slammed plaintiff's head against a car and ground his knee into plaintiff's face without any provocation.). Some amount of force was necessary to pick Krischel up off the floor, and having lawfully arrested her for domestic abuse it was not unreasonable to escort her from her home. In analogous "tight handcuffs" cases our Court of Appeals has "on occasion recognized valid excessive force claims." Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th Cir. 2006). But in those cases the plaintiff suffered permanent injury, see Payne, 337 F.3d at 774-75, or else tight handcuffs were just one of several instances of excessive force. See Herzog v. Village of Winnetka, 309 F.3d 1041, 1043-44 (7th Cir.2002) (officer shoved plaintiff to the ground, cracked her tooth by forcing a Breathalyzer into her mouth,

and forced her to undergo blood and urine testing even though all the available evidence indicated that she was not intoxicated); Lester v. City of Chicago, 830 F.2d 706, 714 (7th Cir.1987) (officers kneed the plaintiff in the back and dragged her down a hallway). Krischel's claim that the defendants held her too tightly is closer to the facts of Tibbs, where the defendant officer refused to loosen the plaintiff's handcuffs after he complained that they were painfully tight. 469 F.3d at 663. When his handcuffs were eventually removed, he "experienced redness in his wrists for about a day and a half." Id. The Court characterized the plaintiff's allegations as "mild" and concluded that "no reasonable jury could find [defendant's] actions were objectively unreasonable." Id. at 666. Here, there is no evidence that Krischel complained to the officers and no evidence of additional misconduct.[7] Krischel testified that the defendants "jerked [her] all around," but she does not cite any specific acts beyond lifting her up off the floor and grabbing her arms tightly.[8]

While it is true that the court in Davis denied summary judgment in superficially similar circumstances, see 1994 WL 14620, at *5 ("Davis contends that Horn grabbed her by the arm so strongly

---

[7] She objected when the defendants attempted to put her into Hennessy's squad car and she told them that she wanted to ride in an ambulance instead. (Krischel Dep. at 50.) They complied with her request. (Id. at 55.)

[8] "Q. That's what you believe those officers did, they jerked you off the floor?
A. Oh, yeah, they were jerking me all around, jerked me up off the floor and all that, yeah." (Krischel Dep. at 81.)

that she was bruised"), <u>Davis</u> was decided before <u>Tibbs</u> and differs
from this case in at least one important respect. The <u>Davis</u> court
denied in part the defendants' motion for summary judgment on the
plaintiffs' false-arrest claims. <u>See</u> <u>id.</u> at *4. Consequently, a
jury could have concluded that the defendants lacked probable cause
to arrest the plaintiff, undercutting the justification for *any*
degree of force. <u>See</u> <u>Chelios</u>, 520 F.3d at 691-92 ("Our prior cases
indicate that '[i]t is clear ... that police officers do not have
the right to shove, push, or otherwise assault innocent citizens
without any provocation whatsoever.'") (quoting <u>Clash v. Beatty</u>, 77
F.3d 1045, 1048 (7th Cir. 1996)). Cihocki and Stubbs were entitled
to use some force to carry out the arrest, which from their
standpoint involved lifting Krischel up off the floor and removing
her from her home. We conclude that the amount of force they
employed in doing so was not excessive.

**2. Whether Hennessy's Actions Were Clearly Unlawful Under Existing Law**

Turning to the second step of the analysis, Krischel can
satisfy her burden to show that the constitutional right at issue
here was clearly established at the time of her arrest by:

> (1) pointing to a closely analogous case that established
> a right to be free from the type of force the police
> officers used on [her], or (2) showing that the force was
> so plainly excessive that, as an objective matter, the
> police officers would have been on notice that they were
> violating the Fourth Amendment.

Clash, 77 F.3d at 1048.  With respect to the first method, it is
not enough to show that excessive force was prohibited as a general
matter, but neither is it necessary to cite case law that is "on
all fours with the current claim."  McGreal v. Ostrov, 368 F.3d
657, 683 (7th Cir. 2004).  Instead, the plaintiff must show that
the available case law "gave the defendants fair warning that their
treatment of the plaintiff was unconstitutional."  Id.

   a.  *Officer Hennessy*

   With respect to Hennessy, much depends on how we characterize
Krischel's movement towards her son.  Defendants argue that
Krischel's statement that she was "probably thinking about slapping
her son" indicates that she would have hit her son — or at least
that a reasonable officer could have believed that she was going to
hit her son — unless Hennessy quickly and forcefully intervened.
But Krischel points out that she did not verbally threaten Knudsen
and that her hands were not raised.  (Pl. Stmt. ¶¶ 14-15.)  Viewing
the evidence in the light most favorable to Krischel, her behavior
was not outwardly threatening whatever she may have been thinking.
And as we have already discussed, the 911 dispatcher's description
of a serious "beat[ing]" was plainly inaccurate.  Under the
circumstances, it is far-fetched to insist, as the defendants do,
that Hennessy had only two choices: permit serious domestic abuse
or aggressively throw Krischel (a 44-year old woman) to the floor
in her own home.  Cf. McNew v. Pleasant, No. 90 C 4825, 1992 WL

162255, *4 (N.D. Ill. July 6, 1992) ("It was within the jury's factfinding discretion to find that, even after Terry McNew continued to walk, Terry McNew could have been stopped by simply grabbing him more firmly instead of immediately tackling him and kneeing him in the back."). Given that the danger to Knudsen was negligible, we conclude that the law put Hennessy on notice that his conduct was unlawful. See, e.g., Payne v. Pauley, 337 F.3d 767, 779 (7th Cir. 2003) ("Officer Pauley's force in arresting a woman who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee, and was charged with such minor offenses, was not objectively reasonable."); Morfin v. City of East Chicago, 349 F.3d 989, 1005 (7th Cir. 2003) (Reversing grant of summary judgment in favor of the defendant officers where the plaintiff claimed that he did not resist arrest before the defendants "grabbed him, twisted his arm, shoved him toward the wall and took him to the floor.").[9] Even in the absence of such case law, we would conclude

---

[9]  See also Falcone v. Village of Hanover Park, No. 02 C 8747, 2004 WL 2900856, *5 (N.D. Ill. Dec. 10, 2004) (Denying summary judgment where, accepting plaintiffs' version of events, she did no more than turn to look at her vehicle whereupon the defendants handcuffed her and performed a "leg sweep."); DuFour-Dowell v. Cogger, 969 F.Supp. 1107, 1121 (N.D. Ill. 1997) ("[D]efendants threw DuFour-Dowell to the floor and applied substantial pressure to her back even though she responded with virtually no resistance and had given virtually no indication of fleeing;" summary judgment denied.); Hill v. Miller, 878 F.Supp. 114, 115 (N.D. Ill. 1995) (Plaintiff claimed that he did not resist arrest before the defendant "pushed him up against the squad car several times" and "wrenched his arm up behind his back and handcuffed him tightly;" summary judgment denied); McNew, 1992 WL 162255, at *2, 4 (Denying motion to amend judgment against the defendant where the plaintiff was "tackled, knocked down, and kneed" despite not presenting a "substantial threat to the security officers or others.").

that the Hennessy's conduct was plainly excessive under the circumstances.

### b. *Officers Cihocki and Stubbs*

Even if we were to conclude that Krischel had demonstrated a constitutional violation, we have not found any closely analogous case law — nor has Krischel alleged conduct so plainly unlawful — that defendants Cihocki and Stubbs would have been on notice that their actions were unconstitutional. <u>Clash</u>, 77 F.3d at 1048. We conclude that they are entitled to qualified immunity.

### C. <u>Malicious Prosecution</u>

Defendants argued in their opening brief that they were entitled to summary judgment on Krischel's malicious-prosecution claim because they had probable cause to arrest her for domestic abuse. (Defs.' Mem. at 7.) After defendants' filed their memorandum, our Court of Appeals ruled in <u>Holmes</u> that "probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." 511 F.3d at 682. Accepting Krischel's version of events, she did not in any way resist or obstruct Hennessy. Nevertheless, she was charged and stood trial for that offense. The fact that defendants had probable cause to arrest Krischel for another offense is irrelevant. <u>See</u> <u>id.</u> at 683 (If probable cause was not required for each charge, "police officers would be free to

tack a variety of baseless charges on to one valid charge with no risk of being held accountable for their excess.").

Recognizing that <u>Holmes</u> dooms their probable-cause argument, defendants now claim that Krischel has not shown that the defendants "legally caused" her prosecution. <u>See</u> <u>Davis v. Temple</u>, 673 N.E.2d 737, 741 (Ill. App. 1996) (Including among the elements for malicious prosecution the requirement that the defendant "legally cause" criminal proceedings to commence against the plaintiff.).[10]  In <u>Davis</u>, the court dismissed the plaintiff's malicious-prosecution claim where he failed to allege that the defendant officer "pressured or coerced the State's Attorney to file charges against the defendant." <u>Id.</u> at 741.  This is not the only way to establish "legal causation," as the <u>Davis</u> court's subsequent discussion indicates. <u>Id.</u> at 741-42 (Observing that the plaintiff had also failed to specify which information in the officer's probable-cause affidavit, on which the charges against the plaintiff were based, was false.).  An individual also causes a plaintiff's wrongful prosecution by initiating legal proceedings based upon false information.  <u>See</u> <u>Pratt v. Kilborn Motors, Inc.</u>, 363 N.E.2d 452, 454 (Ill. App. 1977) (Coercion, pressure *or* false

---

[10]/  This element is only sporadically cited and construed by Illinois courts and appears to arise primarily — but not exclusively — in cases where the defendant is a private citizen.  <u>See, e.g.</u>, <u>Geisberger v. Vella</u>, 379 N.E.2d 947, 948 (Ill. App. 1978) ("Thus, it becomes abundantly clear from the plaintiff's own verified complaint that the criminal proceedings against him were not instituted by any of the defendants but instead were instituted by Lowell A. Gazouski, a Cherry Valley police officer.").

information is sufficient to establish causation.) (citing Restatement of Torts, Explanatory Notes § 653, cmt. g, at 386 (1938)); see also Hernandez v. Longini, No. 96 C 6203, 1998 WL 89302, *4 (N.D. Ill. Feb. 20, 1998) (Noting the dearth of authority interpreting the causation element, but observing: "[w]hat is clear, however, is that a complaining witness that supplies information to a prosecutor that he knows to be false can be held liable as 'legally causing' the subsequent prosecution."). Hennessy executed a misdemeanor complaint charging that Krischel "attempted to pull away from me while I was handcuffing her." (Misdemeanor Compl., attached as Ex. E to Pl. Stmt.) This statement is false, accepting Krischel's version of events, and supports Krischel's allegation that Hennessy caused her prosecution. The factfinder will determine "who is telling the truth." Holmes, 511 F.3d at 685.

But defendants' argument is well-taken with respect to defendants Cihocki and Stubbs. There is no evidence that they participated in any way in Krischel's prosecution, leaving only her speculation that "back at the station Defendants acted together and added these baseless charges in an attempt to cover up and justify their use of excessive force against Krischel." (Pl. Resp. at 10.) This purely hypothetical conspiracy cannot reasonably be characterized as an "inference" from the evidence. Summary

judgment is granted with respect to defendants Cihocki and Stubbs on Krischel's malicious-prosecution claim.

## CONCLUSION

Defendants' motion for summary judgment (45) is granted as to all defendants with respect to Count I (false arrest), and is granted as to defendants Cihocki and Stubbs with respect to Counts II (excessive force) and III (malicious prosecution). The motion is otherwise denied.


DATE:     July 9, 2008

ENTER:    _____

          John F. Grady, United States District Judge